UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

    v.                                   **No. 5:21-cr-23-BJB**

KEVIN RAY ROBERTS

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Defendant Kevin Ray Roberts pled guilty to two counts of possession with the intent to distribute more than 50 grams of methamphetamine—one as part of a conspiracy and the other individually. DNs 1, 74.  A career offender, Roberts received a sentence of 10 years' imprisonment, of which he has now served approximately half. *See* DNs 11, 74.

Roberts now seeks compassionate release under 18 U.S.C. § 3582 based on the incapacitation of his mother, for whom he would be the sole available caregiver.

### I.

A district court must employ a "three-step inquiry" before granting a compassionate-release motion under § 3582(c)(1)(A). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted).  Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quotations omitted).[1]  Those factors include the prisoner's "history and

---

[1] A prisoner also must exhaust any available administrative remedies before filing a motion for compassionate release—at least if the Government asserts exhaustion as a defense, as it did here. *See* § 3582(c)(1)(A); DNs 99, 103, 107.  That is, he must at least submit a compassionate-release request first to the warden—even though recent changes in federal law allow a prisoner to proceed to court even if the warden fails to act. *See United States v. McCall*, 56 F.4th 1048, 1050–51 (6th Cir. 2022) (en banc).  "[A]n imprisoned person" may exhaust his remedies in two ways: he "may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020).  Whether Roberts properly exhausted his administrative remedies is

characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

## II.

Roberts asserts that he is the sole available caregiver for his ailing mother. *See* Motion (DN 97).  Even if his mother were incapacitated (which, as discussed below, is not clear), he has not established that he is her "*only* available caregiver." USSG Policy Statement § 1B1.13(b)(3)(C).  Regardless, the remaining § 3553(a) factors would counsel against release and defeat his motion.

### A. Extraordinary and Compelling

Courts may reduce a term of imprisonment after considering the factors set forth in § 3553(a), finding that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *See United States v. Jones*, 980 F.3d 1098, 1098-1105 (6th Cir. 2020). Section 3582(c) doesn't define "extraordinary and compelling," instead delegating to the Sentencing Commission the task of determining what should count. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020).  " The relevant policy statement here provides that "incapacitation of the defendant's parent," if it renders the defendant "the only available caregiver for the parent," may constitute an extraordinary and compelling circumstance. USSG Policy Statement § 1B1.13(b)(3)(C).[2]

---

not perfectly clear from the record.  But resolving that question is unnecessary given that Roberts's request fails on the merits.

[2] Sixth Circuit caselaw doesn't specify a standard of proof for establishing "extraordinary and compelling" circumstances. *See, e.g.*, *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (implying that the defendant bears a burden to "show" extraordinary and compelling circumstances, but identifying no evidentiary standard). *See also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) (holding that, when a statute is silent on the burden of proof, the "ordinary default rule" is that "the person who seeks court action should justify the request," which means that the moving party—here the inmate—would "bear the burdens on the elements in their claims").  District courts in other circuits addressing similar questions have concluded that a defendant must establish these circumstances by a preponderance of the evidence, but no court of appeals appears to have directly answered that question. *See, e.g.*, *United States v. Sanchez*, No. 1:12-cr-155, 2023 1927804, at *2 (D. Idaho Feb. 10, 2023); *United States v. Torres*, No. 16-cr-500, 2021 WL 37690, at *2 (S.D.N.Y. Jan. 5, 2021); *United States v. Iwai*, No. 15-cr-723, 2020 WL 6470167, at *3 (D. Haw. Nov. 3, 2020); *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020).

### 1. Incapacitation

That policy statement, in turn, does not define the term "incapacitation." To provide a definition, courts have looked to a variety of sources. *See United States v. Steele*, No. 1:20-cr-13, 2024 WL 1928945, at \*3 (S.D. Ohio May 1, 2024) (collecting cases). Some have referred to a Bureau of Prisons program statement, which defines "incapacitated" as "completely disabled," such that one "cannot carry on any self-care and is totally confined to a bed or chair." *See United States v. Taveras,* 731 F. Supp. 3d 94, 98 (D. Mass. 2024) (citing BOP Program Statement § 5050.502). As for dictionaries, a conventional definition of "incapacitated" is "deprived of capacity or natural power: made incapable of or unfit for normal functioning." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (12th ed. 2026), at 811. A more stringent legal definition of "*permanent* incapacitation," meanwhile, covers "less than 100%" disability, albeit "with no possibility of improvement and no ability to live without assistance for the rest of the person's natural life." *See* PERMANENT INCAPACITATION, BLACK'S LAW DICTIONARY (12th ed. 2024).

Other district courts addressing this question in the compassionate-release context have drawn on examples of what incapacitation is—or, more often, isn't. "Many if not all inmates have aging and sick parents," one court observed: "Such circumstances are not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at \*2 (S.D. Ohio July 16, 2019). Even "lifelong cancer," for example, has proved insufficient to establish incapacitation. *United States v. McDowell*, No. 5:10-cr-189, 2025 WL 278498, at \*1 (N.D. Ohio Jan. 23, 2025). Suffice to say, a showing of "incapacitation" must exceed "a high bar for finding that a defendant's parent is incapacitated" that is "compatible with the strict requirements for 'extraordinary and compelling circumstances.'" *Taveras*, 731 F. Supp. 3d at 99–100.

Roberts's motion offers some evidence that his mother faces significant medical challenges, but probably not challenges that rise to the level of incapacitation contemplated by the sources listed above. Medical records describe most of her conditions as "controlled" with the help of medication. *See* DN 97-8 at 14. And, until recently, Ms. Roberts herself helped care for her *own* aging mother (now deceased), suggesting some remaining capacity of her own. *See* DN 97-8 at 14. To be sure, some letters of support suggest that Ms. Roberts's condition has worsened since the loss of her own mother. *See* DN 97-2 and 97-3. And Ms. Roberts herself describes "significant difficulties" with daily tasks and household chores. DN 97-5 at 1. These difficulties undoubtedly deserve sympathy, particularly given the additional strain of a son in prison. But as other courts have observed, many inmates have parents in similar circumstances. *See Ingram*, 2019 WL 3162305, at \*2. This makes it difficult,

if not necessarily impossible, for medical challenges short of full incapacitation to establish extraordinary and compelling circumstances.

### 2. Sole Caregiver

Regardless of whether Ms. Roberts is "incapacitated" under the Sentencing Commission's statement, her son (at least on the current record) hasn't shown that he is her *only* available caregiver. His own motion states that his brother lives "nearby." DN 97 at 3. Although that brother works full-time and has children of his own, those circumstances do not rule him out as a possible caregiver. Courts around the country have recognized that "other potential caregivers can be significantly burdened and still be available." *United States v. Cansler*, No. 4:22-cr-19, 2025 WL 3110562, at \*4 (W.D. Ky. Nov. 6, 2025) (collecting cases). The presentence report also indicates that Roberts has at least one adult child, who could theoretically offer his grandmother help too. As, at least theoretically, could the authors of the many letters of support for Roberts's motion—at least one of whom reports that she is already helping. *See* DN 97-4. Again, mentioning the possibility of alternative care should in no way diminish the difficulty that Roberts's conviction and his mother's illness pose for all involved. But those are ordinary, not extraordinary, functions of aging and incarceration. Courts therefore regularly deny motions lacking evidence that family members—including those far more removed than a son and a grandson— cannot care for a defendant's aging parents. *See, e.g.*, *United States v. Brewer*, No. 11-20537, 2022 WL 1125797, at \*2–3 (E.D. Mich. Apr. 15, 2022).

### B. Section 3553(a) Factors

Even apart from the lack of an extraordinary and compelling circumstance, release would still be unwarranted under the § 3553(a) sentencing factors. Roberts's motion makes no "compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Sherwood*, 986 F.3d at 954. Indeed, aside from listing the factors, his motion doesn't discuss them at all. Given Roberts's obligation to "persuade the district judge to grant the motion after the court considers the § 3553(a) factors," *McCall*, 56 F.4th at 1054, his motion necessarily fails for this additional reason. *See also United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020) ("a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor") (internal quotation marks omitted).

*First*, Roberts's history and characteristics weigh against a sentence reduction. His criminal history dates to at least 1996, when he was convicted of burglary, theft, and trafficking charges. DN 59 at 10. As the United States notes in its response to Roberts's motion, he was on parole for four different felony drug convictions at the time of these methamphetamine offenses. DN 107 at 5. Roberts mentions various forms of rehabilitation in prison, including addiction recovery, class completion, and good behavior. He also received numerous letters of support from his family and community. These efforts and relationships are certainly commendable, and will

serve Roberts well before and after his release.  But Roberts's long criminal history counsels against revisiting his sentence and shortening his time in custody.

*Second*, releasing Roberts would "fail to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense." *United States v. Thomas*, No. 3:12-cr-119, 2022 WL 1421849, at *3 (W.D. Ky. May 5, 2022) (discussing § 3553(a)(2)(A)). "The need to provide just punishment and to reflect the seriousness of the offense … allow courts to consider the amount of time that a defendant has served on a sentence when deciding whether to grant a sentence reduction." *Ruffin*, 978 F.3d at 1008 (internal quotation marks omitted).  According to Roberts's motion, he has served less than half of his 120-month sentence.  DN 97 at 2.  Ten years was the statutory minimum for the conspiracy count to which he pled guilty.  Plea Agreement at 2.  Although the Defendant has made good progress in prison so far, releasing him more than five years early would fail to account for the serious nature of his underlying methamphetamine offenses.  *See Thomas*, 2022 WL 1421849 at *3 (noting the defendant had "has years, not months, left to serve.").

*Third*, as Roberts admits, addiction has fueled much of his criminal activity over the years.  DN 97 at 1.  And that record demonstrates at least some ongoing risk to the community.  *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020).  Although Roberts reports good progress in drug treatment and sobriety at this point in his sentence, that is an expected—not extraordinary—aspect of rehabilitation.

None of the remaining § 3553(a) factors appear to have changed significantly since the time of Roberts's sentencing.  So the Court's judgment today would remain consistent with the sentence imposed during that hearing.  *See Sherwood*, 986 F.3d at 954 (defendant "must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today").  If anything, early release this far from the statutory minimum for his offenses could contribute to unwarranted sentencing disparities relative to others convicted of similar crimes.

### ORDER

Based on the lack of a record establishing an extraordinary and compelling reason for early release, as well as the effect of the § 3553(a) factors, the Court denies Roberts's motion for compassionate release (DN 97).